**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

| | |
|---|---|
| GARY MILLER, Individually and for Others Similarly Situated | **Case No.** **5:25-cv-00214** |
| v. | Jury Trial Demanded |
| CORONADO COAL LLC | FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Gary Miller (Miller) brings this collective action to recover unpaid wages and other damages from Coronado Coal LLC (Coronado).

2. Coronado employed Miller as one of its Hourly Employees (defined below).

3. Coronado pays Miller and the other Hourly Employees by the hour.

4. Miller and the other Hourly Employees regularly work more than 40 hours a workweek.

5. However, Coronado does not pay Miller and the other Hourly Employees for all their hours worked, including overtime hours.

6. Rather, Coronado requires Miller and the other Hourly Employees to suit out in protective clothing and safety gear necessary to safely perform their job duties, gather necessary tools and equipment, and attend safety and operations meetings while on Coronado's premises "off the clock."

7. Likewise, Coronado requires Miller and the other Hourly Employees to change out of and store their safety gear and protective clothing, store their tools and equipment, and wash-up, while on Coronado's premises "off the clock." (¶¶ 6-7 together, Coronado's "pre/post shift off the clock policy").

8. But Coronado does not pay Miller and the other Hourly Employees for the time they spend donning and doffing their safety gear and protective clothing, gathering and storing necessary tools and equipment, and washing-up, "off the clock," before and after their shifts.

9. Additionally, Coronado pays Miller and the other Hourly Employees non-discretionary bonuses, including safety and production bonuses, that it fails to include in their regular rates of pay for the purpose of calculating their overtime rates of pay (Coronado's "bonus pay scheme").

10. Coronado's pre/post shift off the clock policy and bonus pay scheme violate the Fair Labor Standards Act (FLSA) by failing to compensate Miller and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court has general personal jurisdiction over Coronado because it maintains its principal place of business in West Virginia.

13. Venue is proper because Coronado maintains its principal place of business in Beckley, West Virginia, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

14. Coronado employed Miller as a Scoop Operator and Roof Bolter in its Lower War Eagle Mine from approximately October 2016 to October 2023.

15. Throughout his employment, Coronado subjected Miller to its pre/post shift off the clock policy and bonus pay scheme.

16. Miller's written consent is attached as **Exhibit 1**.

17. Miller brings this collective action on behalf of himself and other Coronado employees on whom Coronado imposed its pre/post shift off the clock policy and/or paid under its bonus pay scheme.

18. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Coronado employees who worked during the last three years through final resolution of this action (the "Hourly Employees").**

19. Coronado is a Delaware limited liability company headquartered in Beckley, West Virginia.

20. Coronado may be served with process through its registered agent: **Laura A. Cook, 100 Bill Baker Way Beckley, WV, 25801**, or wherever she may be found.

## FLSA COVERAGE

21. At all relevant times, Coronado was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

22. At all relevant times, Coronado was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

23. At all relevant times, Coronado was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

24. At all relevant times, Coronado had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

25. At all relevant times, Miller and the other Hourly Employees were Coronado's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

26. At all relevant times, Miller and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

27. "Coronado produces high-quality met coal from three mining complexes, in two of the largest and most productive metallurgical coal basins in the world—Queensland's Bowen Basin and the Central Appalachian region of the U.S."[1]

28. "Coronado's two operations in the U.S., [are] located in the Central Appalachian region in Virginia and West Virginia."[2]

29. Coronado advertises open job positions and solicits job applications across all of its U.S. operations through its website.[3]

30. To meet its business objectives, Coronado employs workers, including Miller and the other Hourly Employees, to extract and process metallurgical coal.

31. For example, Coronado employed Miller from approximately October 2016 until October 2023 at its Lower War Eagle Mine as a Scoop Operator and Roof Bolter.

32. As a Roof Bolter, Miller's job duties included operating a roof bolting machine, driving roof bolts into the mine roof to create support structures to prevent collapses, and as a Scoop Operator he utilized the scoop vehicle to transport coal and other materials throughout the mine.

33. Likewise, Miller's job duties included donning and doffing his safety gear and protective clothing, attending safety and production meetings, gathering and preparing tools and equipment, and washing up, on Coronado's premises, before and after his shifts.

---

[1] https://coronadoglobal.com/about-us/ (last visited March 27, 2025).
[2] https://coronadoglobal.com/operations/us/ (last visited March 27, 2025).
[3]https://coronadoglobal.com/jobs/#united-states *and* https://www.irecruitus.com/index.php?OrgID=I20220805&R=Y (last visited March 27, 2025).

34. Throughout his employment, Miller recorded his "on the clock" hours using the timekeeping system designated by Coronado.

35. Thus, Coronado's employment records reflect the number of "on the clock" hours Miller recorded working each week.

36. Throughout his employment, Miller regularly worked more than 40 hours a workweek.

37. Coronado paid Miller approximately $35 an hour.

38. Indeed, throughout his employment, Miller typically worked approximately 10 hours a day and 5 to 6 days a week (50 to 60 hours a workweek) "on the clock."

39. But throughout his employment, Coronado did not pay Miller for all his hours worked.

40. Instead, throughout his employment, Coronado subjected Miller to its pre/post shift off the clock policy.

41. Specifically, Coronado required Miller to dress out in protective clothing and safety gear (including hard hat, head lamp, reflective and fire retardant clothing, ear protection, steel toed boots, safety glasses, gloves, dust mask, respirator, SCSR, tracker, and proximity detector) fundamentally necessary to performing his job, gather tools and equipment necessary to the operation and maintenance of the roof bolter and scoop, and attend safety and production meetings, "off the clock," and without compensation.

42. This took Miller approximately 15-20 minutes each workday.

43. Miller could not perform his principal job duties in accordance with Coronado's procedures and expectations without attending these meetings, donning the protective clothing and safety gear and gathering tools and other equipment.

44. Indeed, much of the gear Miller utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq*; 30 C.F.R. § 77, *et seq*.

45. The donning of protective clothing and safety gear, attending meetings, and gathering other tools and equipment were therefore integral and indispensable work duties for Miller.

46. Likewise, Coronado required Miller to remove and store his safety gear and protective clothing, store his tools and other equipment, and wash up each day after his shift, "off the clock" and without compensation.

47. This took Miller approximately 30 minutes each workday.

48. Miller could not perform his job duties in accordance with Coronado's policies, procedures, and expectations without removing and storing this safety gear and protective clothing, storing the tools and other equipment, and washing up each workday.

49. Miller could not safely perform his job duties in accordance with Coronado's policies, procedures, and expectations without removing and storing this safety gear and protective clothing, storing the tools and other equipment, and washing up each workday.

50. The removal and storage of safety gear and protective clothing, as well as other tools and equipment, and washing up each day were therefore integral and indispensable work duties for Miller.

51. But under its pre/post shift off the clock policy, Coronado did not compensate him for the same.

52. Thus, because of its pre/post shift off the clock policy, Coronado failed to pay Miller wages, including overtime wages for all his overtime hours worked during workweeks he worked in excess of 40 hours.

53. Miller and the other Hourly Employees perform their jobs under Coronado's supervision and use materials, equipment, and technology Coronado approves and supplies.

54. Coronado requires Miller and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

55. Miller's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Coronado.

56. At the end of each pay period, Miller and the other Hourly Employees receive wages from Coronado that are determined by common systems and methods that Coronado selects and controls.

57. Likewise, the other Hourly Employees typically work approximately 10 hours a day and 5 to 6 days a week (50 to 60 hours a workweek) "on the clock."

58. But, just as with Miller, Coronado fails to pay them for all their hours worked.

59. Indeed, Coronado subjects the other Hourly Employees to the same or similar pre/post shift off the clock policy it imposed on Miller.

60. Specifically, just as with Miller, Coronado requires them to dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective and fire retardant clothing, ear protection, steel toed boots, safety glasses, gloves, dust mask, respirator, SCSR, tracker, and proximity detector), attend safety and production meetings, and gather tools and other equipment fundamentally necessary to performing their jobs, "off the clock," and without compensation.

61. And, like Miller, Coronado requires them to remove and store their safety gear and protective clothing, as well as other tools and equipment, and wash up each day after their shifts, "off the clock" and without compensation.

62. And like Miller, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq*; 30 C.F.R. § 77, *et seq*.

63. But, like Miller, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and/or after their shifts.

64. Thus, just as with Miller, Coronado does not pay the other Hourly Employees for this integral and indispensable work they are required to perform "off the clock" before and after their shifts.

65. And, just like Miller, these job duties take the other Hourly Employees approximately 45 to 50 minutes to complete each workday.

66. Coronado fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Coronado does not want performed.

67. And Coronado knows, should know, or recklessly disregards whether Miller and the other Hourly Employees routinely perform integral and indispensable work "off the clock," and without compensation, before and after their scheduled shifts for Coronado's primary benefit.

68. Thus, Coronado requires, requests, suffers, or permits Miller and the other Hourly Employees to work "off the clock," without compensation, before and after their shifts.

69. Despite accepting the benefits, Coronado does not pay Miller and the other Hourly Employees for the compensable work they perform "off the clock."

70. Thus, under Coronado's uniform pre/post shift off the clock policy, Miller and the other Hourly Employees are denied wages, including overtime wages for the compensable work they perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 40 hours.

71. And throughout their employment, Coronado has not paid Miller and the other Hourly Employees at the required premium rate for all hours worked in excess of 40 in a workweek.

72. Instead, Coronado pays Miller and the other Hourly Employees under its bonus pay scheme.

73. Specifically, Coronado pays Miller and the other Hourly Employees non-discretionary bonuses, including production bonuses, retention bonuses, gift cards, daily percentage bonuses, market

premiums, weekend premiums, gas stipends, and safety bonuses, that it fails to include in these employees' regular rates of pay for overtime purposes.

74. Thus, under Coronado's bonus pay scheme, it does not pay Miller and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

75. The Hourly Employees are thus uniformly subject to the same or similar unlawful policies—Coronado's pre/post shift off the clock policy and bonus pay scheme—for similar work, in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

76. Miller brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

77. Like Miller, the other Hourly Employees are victimized by Coronado's pre/post shift off the clock policy and bonus pay scheme.

78. Other Hourly Employees worked with Miller and indicated they were paid in the same manner, performed similar work, and were subject to Coronado's same pre/post shift off the clock policy and bonus pay scheme.

79. Based on his experience with Coronado, Miller is aware Coronado's pre/post shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

80. The Hourly Employees are similarly situated in the most relevant respects.

81. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate for all overtime hours worked.

82. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent collective treatment.

83. Rather, Coronado's pre/post shift off the clock policy and bonus pay scheme render Miller and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

84. Coronado's records reflect the number of "on the clock" hours the Hourly Employees recorded working each week.

85. Coronado's records also show Coronado paid the Hourly Employees non-discretionary bonuses.

86. Coronado's records show it failed to include these non-discretionary bonuses in their regular rates of pay.

87. The back wages owed to Miller and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

88. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Coronado's records, and there is no detraction from the common nucleus of liability facts.

89. Therefore, the issue of damages does not preclude collective treatment.

90. Miller's experiences are therefore typical of the experiences of the other Hourly Employees.

91. Miller has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

92. Like each Hourly Employee, Miller has an interest in obtaining the unpaid wages owed under federal law.

93. Miller and his counsel will fairly and adequately protect the interests of the Hourly Employees.

94. Miller retained counsel with significant experience in handling complex collective action litigation.

95. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Coronado will reap the unjust benefits of violating the FLSA.

96. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

97. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Coronado.

98. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

99. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

100. Among the common questions of law and fact are:

a. Whether Coronado imposed its pre/post shift off the clock policy on the Hourly Employees;

b. Whether Coronado's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation for overtime hours worked;

c. Whether Coronado paid the Hourly Employees non-discretionary bonuses;

d. Whether Coronado engaged in a policy or practice of failing to include non-discretionary bonuses in the Hourly Employees' regular rates of pay for the purpose of calculating overtime;

e. Whether Coronado failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

f. Whether Coronado's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

g. Whether Coronado's violations were willful.

101. As part of its regular business practices, Coronado intentionally, willfully, and repeatedly violated the FLSA with respect to Miller and the other Hourly Employees.

102. Coronado's pre/post shift off the clock policy and bonus pay scheme deprived Miller and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—for overtime hours worked, in willful violation of the FLSA.

103. There are many similarly situated Hourly Employees who have been denied overtime wages who would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join it.

104. The Hourly Employees are known to Coronado, are readily identifiable, and can be located through Coronado's business and personnel records.

## Coronado's Violations Were Willful

105. Coronado knew it employed the Hourly Employees.

106. Coronado knew it was subject to the FLSA's overtime provisions.

107. Coronado knew Miller and the other Hourly Employees were its non-exempt employees entitled to overtime wages.

108. Coronado knew the FLSA required it to pay non-exempt employees, including Miller and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

109. Coronado knew Miller and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because their "on the clock" hours were recorded via its timekeeping system.

110. Coronado knew it paid the Hourly Employees according to its pre/post shift off the clock policy.

111. Coronado knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

112. Coronado knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather tools and equipment, attend meetings, and wash-up, "off the clock."

113. Coronado knew it controlled the Hourly Employees' work procedures.

114. Coronado knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Coronado.

115. Coronado knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties with Coronado.

116. Coronado knew the Hourly Employees routinely performed this daily, required "off the clock" work for Coronado's predominant benefit.

117. In other words, Coronado knew the Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering tools and equipment, attending meetings, and washing-up) "off the clock" and without compensation.

118. Coronado knew it paid Miller and the other Hourly Employees non-discretionary safety and production bonuses.

119. Coronado knew these non-discretionary bonuses were not included in Miller's and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

120. And Coronado knew the FLSA required it to pay Miller and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

121. Coronado knew Miller and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

122. Thus, Coronado knew, should have known, or recklessly disregarded whether it failed to pay Miller and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

123. Coronado's failure to pay Miller and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

124. Coronado knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme and pre/post shift off the clock policy that deprived Miller and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

125. Miller brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

126. Coronado violated, and is violating, the FLSA by employing non-exempt employees, such as Miller and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

127. Coronado's unlawful conduct harmed Miller and the other Hourly Employees by depriving them of the overtime wages they are owed.

128. Accordingly, Coronado owes Miller and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

129. Because Coronado knew, or showed reckless disregard for whether its bonus pay scheme and pre/post shift off the clock policy violated the FLSA, Coronado owes Miller and the other Hourly Employees these wages for at least the past 3 years.

130. Coronado is also liable to Miller and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

131. Finally, Miller and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

132. Miller demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Miller, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order finding Coronado liable to Miller and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c. Judgment awarding Miller and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA;

d. An Order awarding attorneys' fees, costs, and expenses;

e. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Date: April 1, 2025

Respectfully submitted,

**POWELL & MAJESTRO P.L.L.C.**

By: */s/ Anthony J. Majestro*
Anthony J. Majestro (WVSB 5165)
Graham B. Platz (WVSB 14093)
405 Capitol Street, Suite 807
Charleston, West Virginia 25301
Phone: (304) 346-2889
Fax: (304) 346-2895
amajestro@powellmajestro.com
gplatz@powellmajestro.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLC**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR MILLER & THE HOURLY EMPLOYEES**